JOHN D. FREED (S.B.N. 261518)
DAVIS WRIGHT TREMAINE LLP
50 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email:     jakefreed@dwt.com

JAMES DAIRE (S.B.N. 239637)
REED LYON (S.B.N. 288361)
YELP INC.
350 Mission St. 10th Floor
San Francisco, CA 94105
Telephone: (415) 908-3801
Facsimile: (415) 615-0809
Email:     jdaire@yelp.com
Email:     reedlyon@yelp.com

Attorneys for Plaintiff
YELP INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YELP INC., a Delaware corporation,<br><br>　　Plaintiff,<br><br>v.<br><br>PAUL MORENO, an individual, and MORENO ROOFING COMPANY, INC., a California Stock Corporation dba Moreno Roofing and Solar,<br><br>　　Defendants. | CASE NO:<br><br>**COMPLAINT FOR CYBERSQUATTING AND TRADEMARK INFRINGEMENT** |

Plaintiff Yelp Inc. ("Yelp" or "Plaintiff") brings this Complaint against Paul Moreno and Moreno Roofing Company, Inc. dba Moreno Roofing and Solar ("MRC" and, collectively, "Defendants") for injunctive relief and damages.

## NATURE OF THE ACTION

1. Corporations and brands with well-known trademarks are frequent targets of cybersquatters who purposely register or acquire the trademarks as domain names with the intention of later selling that domain names to the corporation or brand for a profit.

2. To help mitigate this problem, the Internet Corporation of Assigned Names and Numbers ("ICANN") developed a Uniform Doman Name Dispute Resolution Policy ("Policy") that permits a speedy and cost-efficient arbitration process to resolve domain disputes between trademark holders and cybersquatters. The Policy also allows cybersquatters to challenge adverse arbitration decisions by timely filing a lawsuit against the trademark holder before the domain name is transferred.

3. The Policy, however, is ineffective when the cybersquatter loses the arbitration and then threatens expensive, meritless litigation against the trademark holder, stalling final disposition of the dispute unless or until the trademark holder capitulates and pays them.

4. In this action, Defendants lost an ICANN arbitration against Yelp relating to the <yelp.ai> domain, and—instead of allowing the orderly transfer of the domain name from Defendants to Yelp as a result of that determination—spent months threatening litigation against Yelp to stall final disposition of the disputed domain, hoping that Yelp would capitulate and pay them.[1]

---

[1] After months of threatening litigation, Defendants finally filed a petition to vacate the arbitration award on October 18, 2023 in *Moreno v. Yelp, Inc.*, No. 23-mc-80272-SK (N.D. Cal.) ("the Moreno Action"). As explained below, it is untimely and meritless.

5. Defendants' wrongful conduct is in bad faith and constitutes cybersquatting and trademark infringement, entitling Yelp to injunctive relief, statutory damages, and recovery of its reasonable attorney's fees.

## THE PARTIES

6. Plaintiff Yelp is a Delaware corporation with its principal place of business located at 350 Mission Street, 10th Floor, San Francisco, California 94105. Founded in 2004, Yelp owns and operates websites and mobile applications (collectively, "the Yelp Service") for users to share information about their communities. The Yelp Service, among other things, provides and publishes a forum for members of the public to read and write reviews about local businesses, services, and other entities including non-profits and government agencies. One of Yelp's founding principles is that the best source for information about a local community is the community members themselves. Through its efforts, Yelp helps the public make more informed choices about local businesses and activities.

7. Defendant Paul Moreno is an individual, resident of Watsonville, California, the owner of a business, MRC, and, on information and belief, a serial acquiror of domain names.

8. Defendant MRC is a California corporation with a principal place of business at 16 Walker Street, Watsonville, California 95076.

9. Defendant Moreno is listed as the registrant for the <yelp.ai> domain name.[2]

---

[2] *See* https://www.whois.com/whois/yelp.ai (listing "Paul Moreno" under "Registrant Contact Name" and "Moreno Roofing and Solar" under "Registrant Contact Organization") (last accessed October 20, 2023). While there is no information regarding "Moreno Roofing and Solar" listed with the California Secretary of State, nor is "Moreno Roofing and Solar" a registered dba with Santa Cruz County, the address listed for Moreno Roofing and Solar under "Registrant Contact" is 16 Walker St. Watsonville, CA 95076. *Id.* That is the same address listed as the principal address for Moreno Roofing Company, Inc. (1675916) on the California Secretary of State Business Search Portal. *See* https://bizfileonline.sos.ca.gov/search/business (listing "Paul Moreno" as the agent for Moreno Roofing Company, Inc.).

10. Defendants are also registered Yelp users with Yelp accounts. Defendant Moreno has had a consumer Yelp account since October 25, 2008 and Defendant MRC has had a Yelp business account (a free account that Yelp provides for businesses, to allow them to claim the Yelp page for their business and add relevant information and other content to the page) since February 6, 2019.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

11. This Court has subject matter jurisdiction over Yelp's claims for cybersquatting (15 U.S.C. § 1125(d)) and trademark infringement (15 U.S.C. § 1114) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over Defendants because Defendant Moreno resides in the District and Defendant MRC is a California corporation with its principal address, mailing address, and agent's address all located within the District.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the District, or 28 U.S.C. § 1391(c) because at least one Defendant resides in this District.

## INTRA-DISTRICT ASSIGNMENT

14. In accordance with Civil Local Rule 3-2(c), this action is properly assigned on a District-wide basis because it relates to intellectual property.

## GENERAL ALLEGATIONS

15. In addition to owning and operating the Yelp Service, Yelp is the owner of numerous federally registered trademarks for YELP and related YELP logos (collectively, "the YELP marks"), including the following:

| SERVICE MARK | REGISTRATION NUMBER | SERVICES |
|---|---|---|
| YELP | 3,660,122 | Online social networking services, in International Class 45. |
| YELP | 3,660,119 | Providing online electronic bulletin boards for |

| SERVICE MARK | REGISTRATION NUMBER | SERVICES |
|---|---|---|
| | | transmission of messages among computer users concerning rankings, ratings, reviews, referrals, and recommendations relating to business organizations and service providers, in International Class 38. |
| YELP | 3,181,664 | Providing telephone directory information via global communications networks; Providing an online interactive website obtaining users comments concerning business organizations, service providers, and other resources; Providing information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to business organizations, service providers, and other resources using a global computer network, in International Class 35. |
| yelp | 3,660,120 | Providing online electronic bulletin boards for transmission of messages among computer users concerning rankings, ratings, reviews, referrals, and recommendations relating to business organizations and service providers, in International Class 38. |
| yelp | 3,316,616 | Providing an online interactive website obtaining users' comments concerning consumer information about businesses, service providers, events, public services and government agencies, parks and recreational areas, religious organizations, and nonprofit organizations; providing consumer information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to businesses, service providers, events, public services and government agencies, parks and recreational areas, religious organizations, and nonprofit organizations using a global computer network, in International Class 35. |
| YELP | 4,438,407 | Providing a website for commercial purposes featuring ratings, reviews, referrals and recommendations relating to businesses, restaurants, service providers, events, public services and government agencies, parks and recreational areas, religious organizations and nonprofit organizations; Providing consumer information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to businesses, restaurants, service providers, events, public services and government |

| SERVICE MARK | REGISTRATION NUMBER | SERVICES |
|---|---|---|
| | | agencies, parks and recreational areas, religious organizations and nonprofit organizations; Advertising, marketing and promotion services, namely, providing information regarding discounts, coupons, rebates, vouchers, links to retail website of others, and special offers for the goods and services of others, in International Class 42. |
| YELP | 4,308,976 | Providing on-line non-downloadable software for displaying and sharing a user's location and finding, locating, and interacting with other users and places, in International Class 42. |
| YELP | 4,308,975 | Downloadable software for providing consumer information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to businesses, restaurants, service providers, events, public services and government agencies, parks and recreational areas, religious organizations and nonprofit organizations; Downloadable software for displaying and sharing a user's location and finding, locating, and interacting with other users and places, International Class 9. |
| YELP | 4,308,974 | On-line journals, namely, blogs featuring information regarding ratings, reviews, referrals, and recommendations relating to businesses, restaurants, service providers, events, public services and government agencies, parks and recreational areas, religious organizations and nonprofit organizations; Entertainment services in the nature of arranging, organizing and hosting social entertainment events, International Class 41. |
| YELP | 4,316,578 | Clothing, namely, t-shirts, tank tops, sweatshirts [, shorts; underwear;] sweatbands; bandanas, International Class 25. |
| YELP | 3,181,664 | Providing telephone directory information via global communications networks; Providing an online interactive website obtaining users comments concerning business organizations, service providers, and other resources; Providing information, namely, compilations, rankings, |

| SERVICE MARK | REGISTRATION NUMBER | SERVICES |
|---|---|---|
| | | ratings, reviews, referrals and recommendations relating to business organizations, service providers, and other resources using a global computer network. |

16. Defendants acquired the <yelp.ai> domain name in May 2023, 19 years after Yelp was founded, 15 years after Defendants opened their first account on the Yelp Service, and two months after Yelp publicly announced its new AI-powered features in April 2023.[3]

17. Defendants do not use the <yelp.ai> domain name and have never used it since they acquired it. As of December 12, 2023, the domain name resolves to a page that says "This site can't be reached."

18. Yelp wrote to Defendants on June 27, 2023 to inform Defendants that they were not licensed or otherwise authorized to use the YELP Marks, and to request that Defendants cease their use of the <yelp.ai> domain name immediately and to transfer the domain name to Yelp. A true and correct copy of this correspondence is attached as **Exhibit A**.

19. Defendants responded to Yelp's letter on June 27, 2023 by offering to sell the <yelp.ai> domain name to Yelp for $5,000, which was how much Defendants claimed they paid for the domain. On the same day, Yelp responded to Defendants' demand, requesting that Defendants provide the receipts and evidence of a bona fide payment for evaluation. A true and correct copy of this correspondence is attached as **Exhibit B**.

20. At that time, Defendants did not provide any receipts or proof of payment but instead hired a lawyer who, in her introductory email to Yelp on July 7, 2023, informed Yelp that

---

[3] *See, e.g.*, https://techcrunch.com/2023/04/25/yelp-rolls-out-ai-powered-search-updates-and-the-abilityto-add-videos-to-reviews/

the amount that Yelp would have to pay Defendants to transfer the <yelp.ai> domain name had increased to $10,000. A true and correct copy of this correspondence is attached as **Exhibit C**.

21. On July 21, 2023, Yelp commenced a complaint (the "UDRP Complaint") in accordance with applicable ICANN Policy. A true and correct copy of the UDRP Complaint (without the annexes) is attached as **Exhibit D**.

22. On August 14, 2023, Defendants submitted their response to Yelp's UDRP Complaint. In their response, Defendants admitted that they had not yet started using the <yelp.ai> domain and did not describe any possible right or legitimate interest in the <yelp.ai> domain or any good faith basis to have acquired the <yelp.ai> domain name. A true and correct copy of Defendants' response (without the annexes) is attached as **Exhibit E**.

23. Defendants' response to Yelp's UDRP Complaint also revealed that "bydomain@proton.me" is one of Defendant Moreno's alternative email addresses, which appears to be designed to traffic in buying and selling domain names and to conceal his identity. Defendant Moreno also maintains an account on "sedo.com" (which advertises itself as "the worlds [sic] largest platform for the professional trading of web addresses") which indicates that <yelp.ai> may not be the only domain name Defendants are trafficking in violation of the cybersquatting statute and other laws.

24. On August 28, 2023, the ICANN Panel issued its decision, finding that <yelp.ai> is identical or confusingly similar to the YELP marks, that Defendants have no rights to or legitimate interests in the domain name, and that Defendants acquired and use the domain name in bad faith. The Panel ordered the registrar, NameCheap, Inc., to transfer the <yelp.ai> domain name to Yelp. A true and correct copy of the Panel's decision is attached as **Exhibit F**.

25. A party to a UDRP proceeding can challenge the Panel's decision pursuant to Rule 4(k) of the Policy by commencing a lawsuit and providing to the Forum, the registrar, and the opposing party a file-stamped copy of the complaint within 10 business days of the decision.

26. Here, Defendants have obstructed the transfer of the domain name by threating non-existent or untimely legal challenges to the Panel's decision, including as follows:[4]

    a. On September 6, 2023, counsel for Defendants emailed Plaintiff, the registrar, and the UDRP representative a document titled "Petition to Vacate or Modify Arbitration [sic] Award; Complaint for Damages and Injunctive Relief" (hereinafter "Petition and Complaint") which Defendants claimed to have filed in this District earlier in the day. A true and correct copy of Defendants' email (without attachments to the email) is attached as **Exhibit G**.

    b. Defendants never properly filed any Petition or Complaint on September 6, 2023, but Defendants' counsel's email successfully prevented the transfer of the domain name to Yelp, because NameCheap refused to transfer the domain name once Defendants claimed to have initiated a legal challenge to the Panel's decision.

    c. On September 11, 2023, Yelp responded by letter to Defendants' email. A true and correct copy of Yelp's letter is attached as **Exhibit H**.

    d. On September 25, 2023, Defendants acknowledged that they had not properly filed any Petition and Complaint—blaming an unnamed "technological issue"—but Defendants still claimed to have filed a lawsuit in this District on September 25—well after the 10-business day deadline established by ICANN policy. Defendants provided a case number to Yelp, 3:23-cv-04885, which Defendants asserted was "confirmation of the case filing."

    e. Also on September 25, 2023, with notice provided to Defendants' counsel, Court staff entered a notice of error in the docket for Case No. 3:23-cv-04885, explaining that it should have been filed as a miscellaneous case, that Defendants had not paid the

filing fee, and that the lawsuit would not be processed by the Clerk's Office. The lawsuit was terminated the same day. A true and correct copy of the Docket Report for this lawsuit is attached as **Exhibit I**.

  f. Defendants never notified Yelp or the registrar of their failure to properly file the lawsuit within the time limits established by ICANN policy.

  g. It was not until October 18, 2023 that Defendants filed an untimely petition to vacate the Panel's decision (finally designating it a "miscellaneous" case and paying the requisite filing fee) by filing the Moreno Action. But even then, Defendants made no effort to serve Yelp with the petition and supporting documents until the Court ordered Defendants to do so on November 13, 2023.

  h. In addition, it appears that Defendants' counsel is not, and has not been since at least September 6, 2023, admitted to practice before the U.S. District Court for Northern District of California, according to the records available at https://www.cand.uscourts.gov/attorneys/attorney-status/. Defendants never informed Yelp or the registrar of this fact either.

27. Defendants' bad faith misrepresentations and omissions about the status of their "lawsuits" (and their ability to file or litigate the "lawsuits")—as well as their failure to timely prosecute those "lawsuits"—have prevented implementation of the Panel's decision and the registrar's transfer of the domain name from Defendants to Yelp, because the registrar will not effectuate the transfer while Defendants claim to be in the midst of challenging the decision, even when the petition is both untimely and legally infirm.

28. While holding up the orderly transfer of the domain name through non-existent and untimely "lawsuits," Moreno emailed Yelp's attorney on September 14, 2023, to again seek payment for the domain name, suggesting that if Yelp did not pay him he would authorize his counsel to "drag[] Yelp's name through the mud and I don't think that is deserved." A true and

correct copy of Moreno's email (redacted to exclude a private email address) is attached as **Exhibit J**.

29. Yelp's attorney promptly forwarded Moreno's email's Defendants' counsel noting that Yelp cannot communicate with Defendants without Defendants' counsel's consent and that Yelp's position in response to Defendants "lawsuits" is laid out in Yelp's September 11, 2023 letter. A true and correct copy of Yelp's attorney's email is attached as **Exhibit K**. Defendants' counsel never responded.

30. The threat to "drag Yelp's name through the mud"—while acknowledging that it would not be deserved—is further evidence of Defendants' bad faith conduct.

## FIRST CAUSE OF ACTION
### Cybersquatting
### 15 U.S.C. § 1125(d)(1)
### (Against All Defendants)

31. Yelp incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

32. The YELP Marks were distinctive and famous at the time Defendants registered, trafficked in, or used the <yelp.ai> domain name.

33. The <yelp.ai> domain name that Defendants registered and/or trafficked in is identical, confusingly similar, or dilutive to the distinctive YELP Marks.

34. Defendants' actions were and have been knowing, deliberate, willful, intentional, flagrantly malicious, and in bad faith—particularly in light of Yelp's rights and global fame and Defendants' awareness of the YELP Marks.

35. Defendants' actions constitute cybersquatting in violation of Yelp's rights under Section 43(d)(1) of the Lanham Act, 15 U.S.C. § 1125(d)(1).

36. As a result of Defendants' cybersquatting in violation of 15 U.S.C. § 1125(d)(1), Yelp has suffered damages in an amount not yet ascertained and to be determined at trial.

Pursuant to 15 U.S.C. § 1117, Yelp is entitled to treble damages, or three times Defendants' profits, whichever amount is greater, as well as attorneys' fees and costs.

37. Pursuant to 15 U.S.C. § 1117(d), Yelp may elect, at any time before final judgment is entered by the court, to recover, instead of actual damages and profits for Defendants' violation of 15 U.S.C. § 1125(d)(1), an award of statutory damages of not less than $1,000 and up to $100,000 per domain name, as the Court considers just.

38. As a result of Defendants' cybersquatting in violation of 15 U.S.C. § 1125(d)(1), Yelp has suffered, and will continue to suffer, irreparable harm. Defendants threaten to continue to engage deliberately in cybersquatting as set forth above and, unless restrained and enjoined, will do so, all to Yelp's irreparable damage. Yelp's remedy at law is not by itself adequate to remedy the harm resulting from Defendants' actions, and the irreparable harm suffered by Yelp will continue unless this Court enjoins Defendants' unlawful conduct.

**SECOND CAUSE OF ACTION**
**Trademark Infringement**
**15 U.S.C. § 1114**
**(Against All Defendants)**

39. Yelp incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

40. Yelp has used its federally registered Yelp trademarks and service marks in connection with the Yelp Service to enable users to share information about their communities since 2004—nearly two decades before Defendants' registration of the <yelp.ai> domain name.

41. Defendants' use of the Yelp name in connection with the <yelp.ai> domain name is likely to cause confusion, mistake, or deception among users and the public as to the source, origin, sponsorship, or quality of Defendants' website. Defendants' use of the <yelp.ai> domain name is likely to confuse consumers, internet users (including Yelp users and potential Yelp users) and the public into believing that Yelp is the source or sponsor of the goods, services, or

commercial activities at Defendants' website, that Yelp is the source, origin, or sponsor of the website, that Yelp is the source or a sponsor of Defendants' business, or that Yelp otherwise approves, endorses, or has an affiliation with Defendants and their products, services, or commercial activities. This violates 15 U.S.C. § 1114, thereby causing damage to Yelp and to the public.

42. Defendants' actions were and have been knowing, deliberate, willful, intentional, flagrantly malicious, and in bad faith—particularly in light of Yelp's rights and global fame and Defendants' awareness of the YELP Marks.

43. As a direct result of Defendants' infringing conduct, Defendants have unjustly traded on Yelp's goodwill and have received revenues in an amount presently unknown but that Yelp will prove at trial. Defendants knew about Yelp's use of the YELP Marks and the fame of those marks by virtue of Defendants' own Yelp accounts (and because Defendants prominently display the YELP Marks on the MRC website) and, by adopting, beginning use, and continuing use of the YELP Marks, Defendants intended to, did induce, and will induce customers by trading off the extensive goodwill built by Yelp in its federal registered YELP Marks. Defendants deliberately selected the <yelp.ai> domain for the purpose of misappropriating Yelp's substantial goodwill and to cause confusion, mistake, and deception among Yelp users, internet users, and the public.

44. As a result of Defendants' conduct, Yelp has suffered and will continue to suffer damages in an amount not yet ascertained and to be determined at trial. Pursuant to 15 U.S.C. § 1117, Yelp is entitled to treble damages, or three times Defendants' profits, whichever amount is greater, as well as attorneys' fees and costs.

45. Pursuant to 15 U.S.C. § 1117(c), Yelp may elect, at any time before final judgment is entered by the court, to recover, instead of actual damages and profits for

Defendants' violation of 15 U.S.C. § 1114, an award of statutory damages of not less than $1,000 and up to $2,000,000 per counterfeit mark, as the Court considers just

46. As a result of Defendants' violation of 15 U.S.C. § 1114, Yelp has suffered, and will continue to suffer, irreparable harm. Defendants threaten to continue deliberately to infringe as set forth above and, unless restrained and enjoined, will do so, all to Yelp's irreparable damage. Yelp's remedy at law is not by itself adequate to remedy the harm resulting from Defendants' actions, and the irreparable harm suffered by Yelp will continue unless this Court enjoins Defendants' unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Yelp prays for judgment against Defendants as follows:

1. Ordering Defendants, and any domain registrar, registry, or other entity with authority over or of the <yelp.ai> domain name, to transfer the registration of the <yelp.ai> domain name (and any other domains Defendants may own, possess, or otherwise control that infringe the YELP Marks) to Yelp;

2. Preliminarily and permanently enjoining Defendants and each of their agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from using the YELP Marks or any colorable imitation thereof, or confusingly similar term, in any manner or fashion;

3. Awarding Yelp up to three times the amount of its actual damages in an amount to be determined by the Court;

4. Awarding Yelp up to three times the amount of Defendants' unjust profits Defendants received as a result of their unlawful conduct, and ordering Defendants to disgorge to Yelp the unjust profits they received as a result of their unlawful conduct;

5. Pursuant to 15 U.S.C. § 1117(c), allowing Yelp to elect, at any time before final judgment is entered by the court, to recover, instead of actual damages and profits for Defendants' violation of 15 U.S.C. § 1114(1)(a), an award of statutory damages of not less than $1,000 and up to $2,000,000 per counterfeit mark per type of services for willful use of a counterfeit mark, as the Court considers just;

6. Pursuant to 15 U.S.C. § 1117(d), allowing Yelp to elect, at any time before final judgment is entered by the court, to recover, instead of actual damages and profits for Defendants' violation of 15 U.S.C. § 1125(d)(1), an award of statutory damages of not less than $1,000 and up to $100,000 per domain name, as the Court considers just;

7. Awarding Yelp exemplary and punitive damages in an amount to be determined;

8. Awarding Yelp its costs, including reasonable attorneys' fees, of this action; and

9. Granting Yelp such other and further relief as the Court deems just and proper.

DATED:  December 13, 2023                    DAVIS WRIGHT TREMAINE LLP


By: /s/ John D. Freed
      JOHN D. FREED
Attorney for Plaintiff
YELP INC.

---

15

COMPLAINT
Case No.