# EXHIBIT D

**FORUM.**
Alternative Dispute Resolution

| | |
|---|---|
| *Yelp Inc.* ) | |
| *350 Mission St., 10th Floor* ) | |
| *San Francisco, CA 94105* ) | |
| ) | |
| **(Complainant)** ) | |
| ) | |
| v. ) | **Domain Name(s) In Dispute:** |
| ) | |
| *Paul Moreno* ) | *yelp.ai* |
| *Moreno Roofing and Solar* ) | |
| *16 Walker St.* . ) | |
| *Watsonville, CA 95076* ) | |
| ) | |
| **(Respondent)** ) | |
| ) | |

**COMPLAINT IN ACCORDANCE WITH
THE UNIFORM DOMAIN NAME DISPUTE RESOLUTION POLICY**

[1.]     This Complaint is hereby submitted for decision in accordance with the Uniform Domain Name Dispute Resolution Policy (the "Policy"), adopted by the Internet Corporation for Assigned Names and Numbers (ICANN) on August 26, 1999 and approved by ICANN on October 24, 1999 (**Annex 1**), and the Rules for Uniform Domain Name Dispute Resolution Policy (UDRP Rules), with an effective date of July 31, 2015, and the FORUM's Supplemental Rules (Supp. Rules). UDRP Rule 3(b)(i).

[2.]     **COMPLAINANT INFORMATION**

   [a.]   Name:        Yelp Inc.
   [b.]   Address:     350 Mission St., 10th Floor, San Francisco, CA 94105
   [c.]   Telephone:   (415) 635-3217
   [d.]   Fax:         N/A
   [e.]   E-Mail:      reedlyon@yelp.com

[3.]     **COMPLAINANT AUTHORIZED REPRESENTATIVE, IF ANY**

   [a.]   Name:        Reed Lyon, Corporate Counsel
   [b.]   Address:     350 Mission St., 10th Floor, San Francisco, CA 94105
   [c.]   Telephone:   (415) 635-3217
   [d.]   Fax:         N/A
   [e.]   E-Mail:      reedlyon@yelp.com

Complainant's preferred contact person for correspondence relating to this case:

    [a.]    Contact Name(s):   Reed Lyon, Corporate Counsel
    [b.]    Contact Emails(s):   reedlyon@yelp.com

The Complainant chooses to have this dispute heard before a (check one):
  __X__ *single-member administrative panel;* ____ *three-member administrative panel.*

**[4.]   RESPONDENT INFORMATION**

    [a.]    Name:    Paul Moreno
    [b.]    Organization:    Moreno Roofing and Solar
    [c.]    Address:    16 Walker St., Watsonville, CA 95076
    [d.]    Telephone:    8318189453
    [e.]    Fax:    8317246202
    [f.]    E-Mail:    roofian@aol.com

**[5.]   RESPONDENT AUTHORIZED REPRESENTATIVE, IF KNOWN**

    [a.]    Name:    Meghan Pratschler
    [b.]    Address:    95 3rd St. Fl. 2, San Francisco, CA 94103
    [c.]    Telephone:    415-335-9226
    [d.]    Fax:    N/A
    [e.]    E-Mail:    meghan@meghantheattorney.com

To the best of Complainant's knowledge, Respondent does not have multiple aliases.

**[6.]   DISPUTED DOMAIN NAME(S)**

    [a.]    The following domain name(s) is/are the subject of this Complaint:

**yelp.ai**

    [b.]    Registrar Information:

        [i.]    Registrar's Name:    Namecheap, Inc.
        [ii.]    Registrar Address:    4600 East Washington St. Ste. 305
                                            Phoenix, AZ 85034
        [iii.]    Telephone Number:    N/A
        [iv.]    E-Mail Address:    support@namecheap.com.

    [c.]    Trademark/Service Mark Information: Rule 3(b)(viii).

Complainant owns several relevant trademarks registered with the United States Patent and Trademark Office, and bases its complaint on the following:

i.    YELP service mark (Registration Number: 4438407). For:

**Providing a website for commercial purposes featuring ratings, reviews, referrals and recommendations relating to businesses**, restaurants, service providers, events, public services and government agencies, parks and recreational areas, religious organizations and nonprofit organizations; Providing consumer information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to businesses, restaurants, service providers, events, public services and government agencies, parks and recreational areas, religious organizations and nonprofit organizations; Advertising, marketing and promotion services, namely, providing information regarding discounts, coupons, rebates, vouchers, links to retail website of others, and special offers for the goods and services of others. FIRST USE: 20041000. FIRST USE IN COMMERCE: 20041000.

ii. YELP trademark (Registration Number: 4308975). For:

**Downloadable software for providing consumer information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to businesses**, restaurants, service providers, events, public services and government agencies, parks and recreational areas, religious organizations and nonprofit organizations; Downloadable software for displaying and sharing a user's location and finding, locating, and interacting with other users and places. FIRST USE: 20080700. FIRST USE IN COMMERCE: 20080700.

iii. YELP service mark (Registration Number: 4308974). For:

**On-line journals, namely, blogs featuring information regarding ratings, reviews, referrals, and recommendations relating to businesses**, restaurants, service providers, events, public services and government agencies, parks and recreational areas, religious organizations and nonprofit organizations; Entertainment services in the nature of arranging, organizing and hosting social entertainment events. FIRST USE: 20051100. FIRST USE IN COMMERCE: 20051100

iv. YELP service mark (Registration Number: 3181664). For:

Providing telephone directory information via global communications networks; **Providing an online interactive website obtaining users comments concerning business organizations**, service providers, and other resources; Providing information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to business organizations, service providers, and other resources using a global computer network. FIRST USE: 20060222. FIRST USE IN COMMERCE: 20060222.

3

v.  YELP service mark (Registration Number: 3660120). For:



**[P]roviding online electronic bulletin boards for transmission of messages among computer users concerning rankings, ratings, reviews, referrals, and recommendations relating to business organizations** and service providers. FIRST USE: 20060222. FIRST USE IN COMMERCE: 20060222.

Each of the foregoing marks (collectively, "the YELP marks") was famous and in use by Complainant years before Respondent registered the domain name at issue, on August 3, 2021. Copies of the trademark registrations are annexed to this complaint as **Annex 2**.

[7.]  **FACTUAL AND LEGAL GROUNDS**

Complainant contends that: (1) Respondent's domain name (<yelp.ai>) is confusingly similar to the YELP marks; (2) Respondent does not have any rights or legitimate interests in the <yelp.ai> domain name; and (3) Respondent registered and used the <yelp.ai> domain name in bad faith.

Complainant addresses each contention below.

[a.]  **Identical and/or Confusingly Similar**

Complainant has rights to the YELP marks through its registrations of the marks with the United States Patent and Trademark Office ("USPTO"). *See, for example, DIRECTV, LLC v. The Pearline Group*, FA1818749 (Forum Dec. 30, 2018) ("Complainant's ownership of a USPTO registration for DIRECTV demonstrate its rights in such mark for the purposes of Policy ¶ 4(a)(i)."). One of the principal uses of the YELP marks is in connection with providing a website for commercial purposes featuring ratings, reviews, referrals and recommendations relating to businesses. *See* **Annex 2**.

Complainant, founded in 2004, owns and operates Yelp.com, a popular local search website, mobile website, and related mobile applications (collectively, the "Yelp Service") for users to share information about their communities. Yelp, among other things, provides and publishes a forum for members of the public to read and write reviews. The YELP marks are famous and the public identifies them with Complainant and for use in connection with third party businesses. As of December 31, 2022, users had posted over 265 million reviews to the Yelp Service, since its inception. *See* **Annex 3**. In 2019, the online survey development company SurveyMonkey reported that 92% of Yelp users use Yelp to look for a business that the user can return to, and 80% of Yelp users share the businesses they find with other people. *See* **Annex 4**.

Respondent's <yelp.ai> domain name incorporates the YELP marks in their entirety and merely (i) adds the ".ai" top-level domain ("TLD")[1]. *See* **Annex 5**. Respondent's use of the YELP marks is confusingly similar to Complainant's marks because simply adding the TLD ".ai" is insufficient to distinguish Respondent's name from Complainant's. *CommScope, Inc. of North Carolina v. Registration Private / Domains By Proxy, LLC*, FA2305002044776 (Forum June 13, 2023) ("The disputed domain name incorporates Complainant's COMMSCOPE mark in its entirety and merely adds the '.ai' generic top-level domain ('gTLD'). Under Policy ¶ 4(a)(i), adding a TLD is insufficient to differentiate a domain name from a mark. … Thus the Panel finds that the <commscope.ai> domain name is identical to Complainant's COMMSCOPE mark under Policy ¶ 4(a)(i).") (citations omitted); *Fiverr International Ltd. v. Omar Jennane*, FA2302002031583 (Forum March 22, 2023) ("The disputed Domain Name <fiverr.ai>

---

[1] Forum decisions have treated the ".ai" top-level domain as a country-code top-level domain ("ccTLD") – since it's the country code for Anguilla (*Fiverr International Ltd. v. Omar Jennane*, FA2302002031583 (Forum March 22, 2023)) and as a generic top-level domain ("gTLD") since the ".ai" top-level domain is often used by businesses that focus on digital services, particularly artificial intelligence, because "ai" is usually interpreted as, and is generic for, "artificial intelligence." *Id.*; *CommScope, Inc. of North Carolina v. Registration Private / Domains By Proxy, LLC*, FA2305002044776 (Forum June 13, 2023).

Whether ".ai" is a ccTLD or a gTLD does not impact the analysis of whether Respondent's use of the <yelp.ai> domain is identical and/or confusingly similar (it is), whether Respondent has any rights or legitimate interest in the domain (he does not), or whether Respondent's registration and use of the domain is in bad faith (it is). *Id.*

incorporates Complainant's FIVERR mark in its entirety with the mere addition of the '.ai' TLD, which is commonly disregarded in the assessment of identity of confusing similarity under the first element."); *Dolby Laboratories Licensing Corporation v. Jiang Nan*, FA2004001891636 (Forum May 14, 2020) (finding the same with regard to the <dolby.ai> domain); *Dell Inc. v. Murphy Zhai*, FA1805001786747 (Forum June 14, 2018 (finding the same with regard to the <dell.ai> domain); *Lockheed Martin Corporation v. J. Chang / A.I. Domains, LLC*, . FA1804001780110 (Forum May 15, 2018 (finding the same with regard to the <lockeedmartin.ai> domain).

Moreover, "yelp.ai" is visually, aurally and conceptually similar to the YELP marks. See, for example, *Twentieth Century Fox Film Corporation v Domain Admin / PrivacyProtect.org / Denis Ferulev*, FA1652313 (Forum Jan. 19, 2016) ("Complainant notes that the domain name contains the recognised acronym for its FAMILY GUY mark, along with the number '24' … the Panel finds that the <fg24.biz> domain name is confusingly similar to the FAMILY GUY mark under Policy ¶ 4(a)(i)."). Also, the addition of a different TLD is insufficient to distinguish a disputed domain name from a mark under Policy ¶ 4(a)(i). *See Starwood Capital Grp. Global LLC v. Resort Realty*, FA1043061 (Forum Sept. 6, 2007) ("… the addition of the generic top-level domain '.com' does nothing to eliminate the confusing similarity, as a top-level domain is a requirement for all domain names.").

Complainant has demonstrated its rights in the YELP marks, and the confusing similarity of Respondent's <yelp.ai> domain, thus satisfying Policy ¶ 4(a)(i).

**[b.]** <u>**Rights or Legitimate Interests**</u>

Once Complainant makes a prima facie case that Respondent lacks rights and legitimate interests in the disputed domain name under Policy ¶ 4(a)(ii), the burden shifts to Respondent to show that it does have rights or legitimate interests. *See, for example, Advanced International Marketing Corporation v. AA-1 Corp.*, FA780200 (Forum Nov. 2, 2011) (finding that a complainant must offer some evidence to make its prima facie case and satisfy Policy ¶ 4(a)(ii)); *Neal & Massey Holdings Limited v. Gregory Ricks*, FA1549327 (Forum Apr. 12, 2014) ("Under Policy ¶ 4(a)(ii), Complainant must first make out a prima facie case showing that Respondent

lacks rights and legitimate interests in respect of an at-issue domain name and then the burden, in effect, shifts to Respondent to come forward with evidence of its rights or legitimate interests").

Here, Respondent does not have rights or legitimate interests in the <yelp.ai> domain name because: (1) Complainant has not authorized Respondent to use the YELP marks; (2) Respondent is not commonly known by the disputed domain name; and (3) Respondent is not making any use of the disputed domain, let alone using it for a *bona fide* offering of goods or services under the Policy.

As to (1), Complainant is the exclusive holder of all rights in the YELP marks and it has not authorized Respondent to use them. Respondent has no affiliation, connection, endorsement or association with Complainant that would allow him to use the YELP marks. In addition, when Complainant learned of the disputed domain name, it wrote to Respondent on June 27, 2023 to inform Respondent that it was not licensed or otherwise authorized to use the YELP marks, and to request that Respondent cease its use of the <yelp.ai> domain and to transfer the domain to Complainant. *See* **Annex 6**.

Respondent responded to Complainant's letter on June 27, 2023 by offering to sell the <yelp.ai> domain to Complainant for $5,000, which was how much Respondent claimed he paid for the domain. *See* **Annex 7**. In his June 27, 2023 demand for $5,000 to transfer the domain, Respondent stated that he could provide receipts to show that he paid $5,000 for the domain. *Id*. Also on June 27, 2023, Complainant requested Respondent provide the receipts and evidence of a *bona fide* payment for evaluation. *Id*. Respondent never provided any receipts or proof of payment to any *bona fide* third party. Instead, Respondent apparently hired a lawyer who, in her introductory email to Complainant on July 7, 2023, informed Complainant that the amount that Complainant would have to pay Respondent to transfer the <yelp.ai> domain had increased to $10,000[2]. *See*

---

[2] Respondent's lawyer's email dated July 7, 2023 indicated that Respondent's demand was to "recover the costs of registration, and now, legal fees, in a total sum of $10,000." And yet Respondent's July 7, 2023 demand did not provide any explanation of what the lawyer had done to incur $5,000 in fees in the 10 days between Respondent's demand for $5,000 (and Complainant's request for receipts and evidence of payment) on June 27, 2023 and Respondent's demand for $10,000 on July 7, 2023.

**Annex 8**. To date, Respondent has not provided Complainant with receipts or evidence of any payment. Nor has Respondent indicated (a) who he supposedly paid this money to in order to obtain the <yelp.ai> domain, (b) why he paid (purportedly) thousands of dollars for a domain that Respondent does not use, for a trademark he has no authorization to use or (c) how Respondent incurred $5,000 in legal fees in the ten days between June 27 and July 7, 2023.

As to (2), WHOIS information can help support a finding that a respondent is not commonly known by the disputed domain name. "UDRP panels have consistently held that WHOIS evidence of a registrant name which does not correspond with the domain name is sufficient to prove that the respondent is not commonly known by the domain name." *Caterpillar Inc. v. Ute Hertz / Sophia FOERSTER / Melanie WEISZ / Nicole SCHWARZ / Maria FINKEL / Client Care / Web Commerce Communications Limited*, FA2305002045288 (Forum June 29, 2023); *see also Chevron Intellectual Property LLC v. Fred Wallace*, FA1506001626022 (Forum July 27, 2015) (finding that the respondent was not commonly known by the <chevron-europe.com> domain name under Policy 4(c)(ii), as the WHOIS information named "Fred Wallace" as registrant of the disputed domain name); *Amazon Technologies, Inc. v. Suzen Khan / Nancy Jain / Andrew Stanzy*, FA1741129 (Forum Aug. 16, 2017) (finding that respondent had no rights or legitimate interests in the disputed Domain Name when the identifying information provided by WHOIS was unrelated to the Domain Name or respondent's use of the same), *Alaska Air Group, Inc. and its subsidiary, Alaska Airlines v. Song Bin*, FA1408001574905 (Forum Sept. 17, 2014) (holding that the respondent was not commonly known by the disputed domain name as demonstrated by the WHOIS information and based on the fact that the complainant had not licensed or authorized the respondent to use its ALASKA AIRLINES mark); *State Farm Mutual Automobile Insurance Company v. Dale Anderson*, FA1504001613011 (Forum May 21, 2015) (concluding that because the WHOIS record lists "Dale Anderson" as the registrant of the disputed domain name, the respondent was not commonly known by the <statefarmforum.com> domain name pursuant to Policy ¶ 4(c)(ii))"). In this case, the WHOIS lists "Paul Moreno" as the registrant

8

of record, with the organization listed as "Moreno Roofing and Solar," showing that the Respondent is not commonly known by the name <yelp.ai>. *See* **Annex 6**; *id.*

There is more. As demonstrated by the WHOIS information, Respondent registered <yelp.ai> on August 3, 2021. *See* **Annex 6**. At that time, Yelp had been around for nearly 17 years, since 2004, and so too had many of the YELP marks. *See* **Annex 2**. Each of these facts also shows that Respondent is not known by the name "yelp.ai." *See Target Brands, Inc. v. baoqiang baoqiang*, FA2212002024824 (Forum January 16, 2023) (holding "Respondent was on actual notice of Complainant's rights in its globally famous TARGET Mark as a result of Complainant's extensive use of the trademark which long predated the date on which Respondent registered the <target.wiki> disputed domain name on December 7, 2022.").

As to (3), the <yelp.ai> domain resolves to a 404 page (*i.e.*, the disputed domain is not being used at all), and Respondent's failure to use the disputed domain is not a *bona fide* offering of goods or services under the Policy. *See Radio Flyer Inc. v. Daisuke Nakajima / Meril .Inc*, FA1804001781847 (Forum May 17, 2018) (finding the respondent had made no legitimate use for any *bona fide* offering of goods or services where the domain name resolved to a website containing the message "This site can't be reached."); *Nutri/System IPHC, Inc. v. Usama Ayub, FA1725806* (Forum June 5, 2017) (holding that "Respondent does not use the <nutrisystemturbo.us> domain for a bona fide offering of goods or services because the domain name resolves to a website that currently is designated as 'under construction.'"); *Charter Communications Holding Company, LLC v. Khurram Haider*, FA2304002040981 (Forum May 19, 2023) (use of the disputed domain name to direct to a landing page that displays a 404 error page is not a legitimate use for any *bona fide* offering of goods or services under Policy ¶ 4(c)(i) or a legitimate noncommercial or fair use under Policy ¶ 4(c)(iii)); *Michelin North America, Inc. v. Energie Media Group*, FA451882 (Forum Aug. 7, 2012) (finding that inactive use, or "passive holding," of the disputed domain name by a respondent "permits the inference that [the respondent] lacks rights and legitimate interests in the domain names."); *Enterprise Holdings, Inc. v. Stephanie Wynter*, FA1780232 (Forum Apr. 30, 2018) (finding lack of rights or legitimate interests where

domain name resolved to default web server page); *Spotify AB v. Mary Janes / Mary LTDA*, FA1777750 (Forum Apr. 20, 2018) (same, where domain name did not resolve to a website); *Otter Products, LLC v. Robot Flower*, FA1771989 (Forum Mar. 13, 2018) (same, where domain name resolved to "coming soon" web page); *Bloomberg L.P. v. SC Media Servs. & Info. SRL*, FA296583 (Forum Sept. 2, 2004) ("Respondent is wholly appropriating Complainant's mark and is not using the <bloomberg.ro> domain name in connection with an active website. The Panel finds that the [failure to make an active use] of a domain name that is identical to Complainant's mark is not a bona fide offering of goods or services pursuant to Policy ¶ 4(c)(i) and it is not a legitimate noncommercial or fair use of the domain name pursuant to Policy ¶ 4(c)(iii).").

Nor is holding an infringing domain name simply to sell it to the owner of the mark a *bona fide* offering or a legitimate noncommercial or fair use per Policy ¶¶ 4(c)(i) or (iii). *See Fiverr International Ltd. v. Omar Jennane*, FA2302002031583 (Forum March 22, 2023) (finding respondent did not register the <fiverr.ai> domain in connection with a *bona fide* offering of goods or services or a legitimate noncommercial or fair use, but "most likely, to gain profit from the sale of the disputed Domain Name to Complainant, owner of the identical FIVERR mark."); *University of Rochester v. Park HyungJin*, FA1410001587458 (Forum Dec. 9, 2014) ("The Panel finds Respondent's willingness to sell this <perifacts.com> domain name in excess of out-of-pocket registration costs weighs against Respondent's case for rights or legitimate interests in the domain name."); *Micro Electronics, Inc. v. Domain Admin*, FA1912001873840 (Forum Jan. 9, 2020) ("Here, Complainant provides screenshots of the disputed domain name which resolves to a parked webpage which currently offers the disputed domain name for sale for $5000. The Panel agrees with Complainant that this use does not amount to a bona fide offering or good or services or a legitimate noncommercial or fair use per Policy ¶¶ 4(c)(i) or (iii)"); *see also Mulberry Co. (Design) Ltd. v. Chen*, D2010-1718 (WIPO Nov. 26, 2010) ("[The] disputed domain names are being used by the Respondent for websites which falsely appear to be affiliated, connected or associated with the Complainant. In this Panel's view, such use and purpose of the disputed domain names without the authorization of the trade mark owner shows that the Respondent is not making a legitimate

noncommercial or fair use of the disputed domain names or a *bona fide* offering of goods and services."). As such, here, Respondent's use is not a *bona fide* offering of goods or services or a legitimate noncommercial or fair use, and Respondent has no rights under Policy ¶¶ 4(c)(i) or (iii).

In sum, the disputed domain name incorporates Complainant's registered marks without authorization in violation of Complainant's intellectual property rights and Terms of Service, and Respondent is attempting to sell the disputed domain to Complainant for far more than it paid to register the domain. Such use does not give rise to rights or legitimate interests under the Policy. Accordingly, Complainant has carried its burden that Respondent lacks rights and legitimate interests in the disputed domain name, thus satisfying Policy ¶ 4(a)(ii).

**[c.]** **Registration and Use in Bad Faith**

To establish bad faith for the purposes of the Policy, Complainant must show that the disputed domain name was registered in bad faith and has been used in bad faith. The criteria set out in Policy ¶ 4(b) for establishing bad faith are not exclusive, and complainants in UDRP proceedings may also rely on conduct that is bad faith within the generally accepted meaning of that expression. Here, the following facts show that Respondent registered and used the disputed domain name in bad faith.

First, when a respondent attempts to sell a contested domain to the complainant at a price exceeding the actual registration cost, panels have found bad faith under Policy ¶ 4(b)(i). *Fiverr International Ltd. v. Omar Jennane*, FA2302002031583 (Forum March 22, 2023) (finding bad faith when the respondent attempted to sell the <fiverr.ai> domain to complainant Fiverr for $50,000 – "an amount well in excess of the documented out-of-pockets costs."); *Yahoo Inc. v. Zanybh Solutions*, FA2212002022496 (December 12, 2022) (finding bad faith and ordering the domain transferred when the respondent attempted to sell the domain to complainant for $5,000); *Vanguard Trademark Holdings USA LLC v. Wang Liqun*, FA1506001625332 (Forum July 17, 2015) ("A respondent's general offer to sell a disputed domain name for an excess of out-of-pocket costs is evidence of bad faith under Policy ¶ 4(b)(i)."); *VNG CORPORATION v. Manh Hung Nguyen*, FA2110001967590 (November 4, 2021) (finding registration and use in bad faith where

respondent demanded $5,000 for the disputed domain name); *Galvanize LLC, dba Galvanize v. Brett Blair / ChristianGlobe Network*, FA1405001557092 (Forum June 26, 2014) (finding that the respondent registered and used the disputed domain name in bad faith under Policy ¶ 4(b)(i) because it countered Complainant's offer to buy the disputed domain name with an offer to sell the disputed domain name of $100,000); *loanDepot.com, LLC v. Expired domain caught by auction winner.\*\*\*Maybe for sale on Dynadot Marketplace\*\*\* c/o Dynadot*, FA1786281 (Forum June 8, 2018) ("Complainant shows that Respondent offers the disputed domain name for sale for $950, no doubt above its out-of-pocket costs. The Panel finds that this constitutes bad faith under Policy ¶4(b)(i)."). The current price to acquire an .ai domain name from NameCheap, Respondent's Registrar of choice, is $79.98. *See* **Annex 9**. That is more than 62 times Respondent's first demand for $5,000 and more than 125 times Respondent's second demand for $10,000.

Second, the <yelp.ai> domain is not being used. Rather, it resolves to an error page that reads "This site can't be reached. Check if there is a typo in yelp.ai. DNS_PROBE_FINISHED_NIXDOMAIN." *See* **Annex 10**. Respondent does not use and can have no possible good faith basis to register or use the <yelp.ai> domain. Respondent has not made (and indeed cannot make) any showing of any right or legitimate interest in the disputed domain name, nor made any showing how it could possibly do so given Complainant's long use of the widely-recognized YELP marks. *See Nvidia Corporation v. MM / MM*, FA1803001779230 (Forum May 14, 2018) (regarding respondent's registration of the <nvidia.ai> domain, "[t]here is no actual use of the domain name but in the circumstances the Panel can see no potential for bona fide use of the name and so finds so-called 'passive holding' and use in bad faith[.]"). Stated simply, Respondent's failure to make any active use of the disputed domain name further supports Respondent's bad faith. *See Radio Flyer Inc. v. Daisuke Nakajima / Meril .Inc*, FA1804001781847 (Forum May 17, 2018) (finding registration in bad faith where the domain name resolved to a website containing the message "This site can't be reached."); *7-Eleven, Inc. v. mgame mgame*, FA2108001958009 (Forum Aug. 30, 2021) (finding "Respondent's passive holding and failure to

make any active use of the disputed domain name raises the inference that the disputed domain name is being used in bad faith."); *VideoLink, Inc. v. Xantech Corporation*, FA1503001608735 (Forum May 12, 2015) ("Failure to actively use a domain name is evidence of bad faith registration and use pursuant to Policy ¶ 4(a)(iii)."); *Capital One Financial Corp. v. Michael Dempsey / capitalonefinanceservices*, FA1603001668033 (Forum Apr. 26, 2016) (finding registration in bad faith where the disputed domain name resolved to an inactively held page displaying the message, "404 – File Not Found."); *The Travelers Indemnity Company v. Kate Jones*, FA1902001829631 (Forum March 15, 2019) (holding respondent's failure to use the domain name, which resolved to a page reading "404 Error – Page Not Found" constituted "additional evidence of Respondent's bad faith under the Policy."); *Coachella Music Festival, LLC v. victor Rincon*, FA1809001806946 (Forum Nov. 1, 2018) (same).

Third, Respondent registered the disputed domain name with actual knowledge of Complainant's famous marks. Respondent is a Yelp user and has had a Yelp for Business account in connection with his roofing business since February 6, 2019 and a personal Yelp account since October 25, 2008. *See* **Annex 11**. This proves that Respondent registered the disputed domain name with actual knowledge of Complainant's famous marks. While constructive notice may not be sufficient to demonstrate bad faith, actual knowledge of a complainant's rights in a mark prior to registration may be evidence of bad faith per Policy ¶ 4(a)(iii). *See AutoZone Parts, Inc. v. Ken Belden*, FA1815011 (Forum Dec. 24, 2018) ("Complainant contends that Respondent's knowledge can be presumed in light of the substantial fame and notoriety of the AUTOZONE mark, as well as the fact that Complainant is the largest retailer in the field. The Panel here finds that Respondent did have actual knowledge of Complainant's mark, demonstrating bad faith registration and use under Policy ¶ 4(a)(iii)."); *Univision Comm'cns Inc. v. Norte*, FA1000079 (Forum Aug. 16, 2007) (rejecting the respondent's contention that it did not register the disputed domain name in bad faith since the panel found that the respondent had knowledge of the complainant's rights in the UNIVISION mark when registering the disputed domain name); *see also Orbitz Worldwide, LLC v. Domain Librarian*, FA1535826 (Forum Feb. 6, 2014) ("The Panel

13

notes that although the UDRP does not recognize 'constructive notice' as sufficient grounds for finding Policy ¶ 4(a)(iii) bad faith, the Panel here finds actual knowledge through the name used for the domain and the use made of it."); *Logitech International S.A. v. Melanie Herber / Logitech*, FA2306002049698 (Forum July 14, 2023) ("The Panel finds that Respondent had actual knowledge of Complainant's rights in the mark prior to Respondent's registration of the disputed domain name and that this constitutes bad faith under Policy ¶ 4(a)(iii).")

In sum, Respondent's failure to use the disputed domain while seeking to extort Complainant to pay an exorbitant fee to transfer the domain is in bad faith. Complainant has carried its burden as to bad faith and satisfied Policy ¶ 4(a)(iii).

## [8.]   REMEDY SOUGHT

The Complainant requests that the Panel issue a decision that the <yelp.ai> domain name be transferred to Complainant.

## [9.]   OTHER LEGAL PROCEEDINGS

There are no other legal proceedings.

## [10.]   MUTUAL JURISDICTION

The Complainant will submit, with respect to any challenges to a decision in the administrative proceeding canceling or transferring the domain name, to:

X____  a) the location of the principal office of the concerned registrar or

_____  b) where the Respondent is located, as shown by the address(es) given for the domain name holder in the Whois Database at the time of the submission of the Complaint to FORUM.

## [11.]   CERTIFICATION

Complainant agrees that its claims and remedies concerning the registration of the domain name, the dispute, or the dispute's resolution shall be solely against the domain-name holder and

waives all such claims and remedies against (a) the FORUM and panelists, except in the case of deliberate wrongdoing, (b) the registrar, (c) the registry administrator, and (d) the Internet Corporation for Assigned Names and Numbers, as well as their directors, officers, employees, and agents.

Complainant certifies that the information contained in this Complaint is to the best of Complaint's knowledge complete and accurate, that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in this Complaint are warranted under these Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully Submitted,

_____
*[Signature]*

____Reed Lyon_____
*[Name]*

____July 21, 2023_____
*[Date]*