# EXHIBIT H



**VIA EMAIL**: meghan@meghantheattorney.com

**September 11, 2023**

Meghan Pratschler
Meghan the Attorney, LLP
95 3rd St. Fl. 2
San Francisco, CA 94103-3103
meghan@meghantheattorney.com

                **Re:**    *Moreno v. Yelp Inc.*, **Case No. 23-cv-04569**
                        **United States District Court for the Northern District of California**

Ms. Pratschler,

Although Yelp has not been served, Yelp is aware that you have filed a Petition to Vacate or Modify Arbitration Award and Complaint for Damages and Injunctive Relief on your client's behalf in the above-captioned action, in which you seek to vacate the Forum Panel's decision ordering the transfer the <yelp.ai> domain name to Yelp.

Yelp is now preparing to assert its own claims against your client, including a claim for cybersquatting under 15 U.S.C. § 1125(d), and to fully defend itself if this action continues. However, we want to give you the opportunity to voluntarily dismiss the action before Yelp is forced to respond in court and seek statutory damages against your client. We request a response to this letter no later than **Tuesday, September 19, 2023**. I urge you to review this letter carefully.

To prevail on a Section 1125(d) cybersquatting claim, a plaintiff must show (1) the defendant registered, trafficked in, or used a domain name that is (2) identical, confusingly similar or dilutive to a protected mark owned by plaintiff, and (3) the defendant acted with bad faith intent to profit from that mark. *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (cleaned up). Yelp will be able to prove each element of this claim for the reasons described in the Panel's decision.

Once the elements of a cybersquatting claim are established, a court may award the plaintiff statutory damages up to $100,000 "as the court considers just." 15 U.S.C. § 1117(d). To determine a just award, courts may consider the egregiousness or willfulness of the cybersquatting, use of false contact information to conceal infringing activities, evidence of "serial" cybersquatting–*i.e.*, engaging in pattern of registering and using a multitude of domain names that infringe the rights of other parties—and whether the conduct evidences an attitude of contempt toward the court or the proceedings. 15 U.S.C. § 1125(d)(1)(B)(i) (listing factors that a court may consider in determining bad faith intent); *Verizon Cal. Inc. v. Onlinenic, Inc.*, No. C 08-2832 JF (RS), 2009 U.S. Dist. LEXIS 84235, 2009 WL 2706393, at *3 (N.D. Cal. Aug. 25, 2009).



We note these factors here because your client's response in the Forum arbitration revealed that "bydomain@proton.me" is his alternative email address, which appears to be designed to traffic in buying domain names and conceal his identity. We intend to seek discovery into your client's domain-trafficking activities if this action continues. We also note that Yelp publicly announced its new AI-powered search updates in April 2023, less than two months before your client now alleges that he purchased the <yelp.ai> domain name.[1]

While Yelp will vigorously assert its rights if this case moves forward, including by filing a counterclaim for cybersquatting and seeking statutory damages, Yelp is willing to forego doing so if you voluntarily and immediately dismiss the Petition and Complaint with prejudice and abide by the Panel's decision that the <yelp.ai> domain be transferred to Yelp.

This offer will remain open until **5:00 p.m., Pacific Time, on Tuesday, September 19, 2023**. Please contact me with your response by that time. Yelp may revoke this offer at any time.

Nothing in this letter is intended to waive any defenses or claims Yelp may have in this action. All such rights are reserved.

Regards,

Reed Lyon
Litigation Counsel
Yelp Inc.
350 Mission Street, 10th Floor
San Francisco, CA 94105
reedlyon@yelp.com

cc: Jake Freed (via email)

---

[1] *See, e.g.,* https://techcrunch.com/2023/04/25/yelp-rolls-out-ai-powered-search-updates-and-the-ability-to-add-videos-to-reviews/